In the District Court of the United States
For the District of Vermont
RUTLAND

(1) Harland Cantin, )
   and )
(2) Dorothy Cantin, a married couple, )
  )
   plaintiffs, )
  )
vs. ) No. 2:06-cv-218
  )
(1) Nature Conservancy, a foreign )
   corporation )
   domestic to the state of Virginia )
(2) Robert R. Bent, an individual, )
(3) Charles D. Hickey, an individual, )
   and )
(4) Kristina Michelesen, an individual, )
  )
   defendants. )

Complaint under authority of 18 U.S.C. § 1964(a)&(c)
for violation of 18 U.S.C. §§ 1341, & 1961

Subject matter jurisdictional statement

FEDERAL QUESTION JURISDICTION: 28 USC § 1331: The federal district court has subject matter jurisdiction to consider this claim under authority of 18 USC 1964(a)&(c) and by virtue of sufficient pleadings clearly articulating violations of 18 USC §§ 1961, & 1341.

Statement of *in personam* jurisdiction

The Nature Conservancy is an enterprise operating in and affecting interstate commerce from a location in Arlington, Virginia. Robert R. Bent, Charles D. Hickey, and Deborah T. Bucknam operate from domiciles within the state of Vermont; however, Bent, Hickey, and Bucknam operate in interstate commerce. Harland Cantin and Dorothy Cantin are domiciled within the geographic confines of the District of Vermont.

1

Statement of venue

Venue is appropriate in the District of Vermont as the predicate acts of fraud and mail fraud committed by The Nature Conservancy were perpetrated in the District of Vermont.

Theory of the case

The Nature Conservancy uses fraudulent land surveys to defraud property owners such as Harland Cantin and Dorothy Cantin. The Nature Conservancy has unrivaled resources when compared to individuals such as Harland Cantin and Dorothy Cantin. A jury shall determine that the Nature Conservancy is not about conserving God's natural creations. The Nature Conservancy puts up a false front of having a compelling cause for conservation of God's natural creations; but in reality, the Nature Conservancy is a racketeer influenced corrupt organization that uses subterfuge to steal property so parties such as Robert R. Bent, Charles D. Hickey, and Deborah T. Bucknam can receive income from the spoils. By enlisting such parties as Robert R. Bent, Charles D. Hickey, and Deborah T. Bucknam, who succeed by forcing those who would stand up to the corruption to *spend themselves broke;* or in the alternative to improperly influence legal process, the Nature Conservancy *makes out* as a *surefire way* for parties such as Robert R. Bent, Charles D. Hickey, and Deborah T. Bucknam to make a living at the expense of others. A jury shall determine that the Nature Conservancy, with assets in excess of three point three billion dollars ($3,300,000,000.00) is the largest so-called charity/environmental organization in the world able to destroy those loving the land and the Constitution by applying whatever influence is necessary with courts.

Favorite misdeeds of the Nature Conservancy include the sale of ecologically sensitive land to trustees of the Nature Conservancy as home sites. The Nature

Conservancy has a history of buying "raw" land, attaching some developmental restrictions on the land which turn out to be facile and vacuous, then reselling the land to supporters at greatly reduced prices. A typical bamboozle by the Nature Conservancy involves preferred buyers giving the Conservancy cash payments for roughly the amount of the discount relative to the purchase price of the property, a sum that is then written off the preferred buyers' federal income taxes, a practice which is illegal.

Another of the dirty tricks of the Nature Conservancy is to acquire ecologically sensitive land and then contradict the presumed purposes of the Nature Conservancy by subsidizing industrial practices which are openly damaging to the environment. In this illicit activity, the Nature Conservancy is nothing more and nothing less than a shilling for industries which pollute and destroy the environment under the fraud and guise that a giant industrial conglomerate somehow cleanses their trashing of the environment by contributing to an alleged environmental protection organization, the Nature Conservancy. In totality, the Nature Conservancy is nothing more and nothing less than a criminal enterprise, a racket, where bad actors such as Robert R. Bent are "licensed" to tell any lie, violate any rule, break any law, or commit any crime necessary to steal property from parties similarly situated to Harland and Dorothy Cantin so long as Bent and those of similar ilk sufficiently benefit the Nature Conservancy in a manner that will enable more and more of Bent's business associates to get in on the same scams.

FIRST PREDICATE ACT: the Nature Conservancy, by and through Robert Bent, perpetrated a scheme to defraud Harland and Dorothy Cantin of substantial property. The fraud began circa March of 2005 and originated from Bent's location in Johnsbury, Vermont. Bent prepared papers which Bent knew were false and utter the false papers through the United States Mail Service. It was Bent's intention as predicate actor representing the Nature Conservancy to deceive and mislead

Harland and Dorothy Cantin with the result of defrauding Harland and Dorothy Cantin of valuable property which Bent sought to incorporate into the Nature Conservancy's webb of lies, fraud, and deceit.

SECOND PREDICATE ACT: About January of 2006, the Nature Conservancy, by and through Robert Bent, perpetrated a scheme to defraud Harland and Dorothy Cantin of substantial property. The fraud began circa March of 2005 and originated from Bent's location in Johnsbury, Vermont. Bent prepared papers which Bent knew were false and utter the false papers through the United States Mail Service. It was Bent's intention as predicate actor representing the Nature Conservancy to deceive and mislead Harland and Dorothy Cantin with the result of defrauding Harland and Dorothy Cantin of valuable property which Bent sought to incorporate into the Nature Conservancy's webb of lies, fraud, and deceit. A jury shall determine that Robert Bent was ready, willing, and able to fabricate documents in an attempt to defraud Harland and Dorothy Cantin.

THIRD PREDICATE ACT: About January of 2006, the Nature Conservancy, by and through Robert Bent, perpetrated a scheme to defraud Harland and Dorothy Cantin of substantial property. The fraud began circa March of 2005 and originated from Bent's location in Johnsbury, Vermont. Bent prepared papers which Bent knew were false and utter the false papers through the United States Mail Service. It was Bent's intention as predicate actor representing the Nature Conservancy to deceive and mislead Harland and Dorothy Cantin with the result of defrauding Harland and Dorothy Cantin of valuable property which Bent sought to incorporate into the Nature Conservancy's webb of lies, fraud, and deceit. A jury shall determine that Robert Bent's theories of how to steal property were *way out in left field* having no basis in any lawful proceeding. Submitted: When you're Robert Bent, backed by a racketeer influence corrupt organization with

4

assets of over three point three billion dollars ($3,300,000,000.00) – *no sweat!* Just make up whatever law you need – you've got the resources to buy any influence you need.

FOURTH PREDICATE ACT: About April of 2006, Mr. Bent *got to* Alan W. Cook with one of Bent's frauds and enlisted Mr. Cook in the scheme to defraud Harland and Dorothy Cantin. A jury shall determine that Robert Bent is shamelessly corrupt in that Bent will tell any lie, violate any rule, break any law, or commit any crime and/or influence whoever through whatever means necessary to perfect his and the Nature Conservancy's schemes of fraud and extortion.

FIFTH PREDICATE ACT: About May of 2006, the Nature Conservancy, by and through Kristina Michelesen who was aided and abetted by Edward R. Zuccaro, senior partner of Zuccaro Willis, formerly Zuccaro Willis & Bent, perpetuated the scheme to defraud Harland and Dorothy Cantin of substantial property. Michelesen prepared false papers and uttered the false papers through the United States Mail Service. It was Michelesen's intention as predicate actor representing the Nature Conservancy to deceive and mislead Harland and Dorothy Cantin with the result of defrauding Harland and Dorothy Cantin of valuable property which Michelesen joined Bent in seeking to incorporate into the Nature Conservancy's webb of lies, fraud, and deceit.

SIXTH PREDICATE ACT: About May of 2006, the Nature Conservancy, by and through Kristina Michelesen who was aided and abetted by Edward R. Zuccaro, senior partner of Zuccaro Willis, formerly Zuccaro Willis & Bent, further perpetuated the scheme to defraud Harland and Dorothy Cantin of substantial property. Michelesen prepared false papers and uttered the false papers through the United States Mail

Service. It was Michelesen's intention as predicate actor representing the Nature Conservancy to deceive and mislead Harland and Dorothy Cantin with the result of defrauding Harland and Dorothy Cantin of valuable property which Michelesen joined Bent in seeking to incorporate into the Nature Conservancy's webb of lies, fraud, and deceit. A jury shall determine that the papers prepared by Michelesen constituted fraud in fact which Harland and Dorothy Cantin were expected to rely on to their detriment; in fact, others did succumb to the frauds perpetrated by Michelesen and Bent.

### Plaintiffs' preliminary RICO case statement

The Nature Conservancy, is in engaged in racketeering by taking money and property from parties situated similarly to Harland and Dorothy Cantin. This court shall notice that Harland and Dorothy Cantin, in their complaint, testify of injury to property and business by reason of acts which violate section 4 of the Clayton Act. See *Attick v. Valeria Associates, L.P.*, S.D. N.Y. 1992, 835 F. Supp. 103. Harland and Dorothy Cantin have articulated violations of racketeering laws, testified that the violations injured both business and property warranting treble damages. See *Avirgan v. Hull*, C.A. 11 (Fla.) 1991, 932 F.2d 1572. In naming The Nature Conservancy, Harland and Dorothy Cantin have established that an enterprise exists which undeniably affects interstate commerce. See *Yellow Bus Lines, Inc. v. Drivers, Chauffeurs & Helpers Local Union 639*, C.A.D.C. 1990, 913 F.2d 948, 286 U.S. App. D.C. 182, certiorari denied 111 S.Ct. 2839, 501 U.S. 1222, 115 L.Ed. 2d 1007. Harland and Dorothy Cantin have standing to sue under RICO as Harland and Dorothy Cantin have shown violations of RICO, injury to business and property, and causation of the injury by the violations. See *Hecht v. Commerce Clearing House, Inc.* C.A. 2 (N.Y.) 1990, 897 F.2d 21, 100 A.L.R. Fed. 655. Harland and Dorothy

6

Cantin have perfected a RICO claim by showing the existence of a RICO enterprise, showing a pattern of racketeering activity: fraud, shown nexus between the defendants and the pattern of frauds, and shown resulting injury to business and property. See *Standard Chlorine of Delaware, Inc. v. Sinibaldi*, D.Del. 1992, 821 F. Supp. 232. Harland and Dorothy Cantin have demonstrated that Harland and Dorothy Cantin sustained injury as proximate result of the pattern of frauds by the defendants. See *Jordan v. Herman*, F.D. Pa. 1992, 792 F. Supp. 380. The Nature Conservancy, empowers Robert Bent to do illicit business benefiting the Nature Conservancy, directly and indirectly. The Nature Conservancy is able to recoup and profit by the Nature Conservancy's investment affecting interstate commerce. See *Nassau-Suffolk Ice Cream, Inc. v. Integrated Resources, Inc.* S.D.N.Y. 1987, 114 F.R.D. 684. Harland and Dorothy Cantin clearly articulated being Bent's target of fraud and resulting de jure property loses. See *Polletier v. Zweifel*, C.A. 11 (Ga.) 1991, 921 F.2d 1465, rehearing denied 931 F.2d 901, certiorari denied 112 S.Ct. 167, 502 U.S. 855, 116 L.Ed. 131. The cause-in-fact that but-for the chicanery of the enterprise members, Bent and Michelesen, Harland and Dorothy Cantin would have not been deprived of money and their business would not have incurred tangible losses is sufficient to state factual causation for provision of RICO act providing for treble damages. See *Khurana v. Innovative Heath Care Systems, Inc.*, C.A. 5 (La.) 1997, 130 F.3d 143, vacated 119 S.Ct. 442, 525 U.S. 979, 142 L.Ed. 2d 397, on remand 164 F.3d 900. Harland and Dorothy Cantin's reliance on traditional principles of proximate causation applying to RICO cases is illustrated in the well pleaded testimony that Harland and Dorothy Cantin were the target of extortion and their business interfered with by predicate acts of the defendants. See *In re American Honda*

*Motor Co., Inc. Dealership Relations Litigation*, D. Md. 1996, 941 F.Supp. 528. There exists an undeniable relationship between the acts of the defendants and the damage to property and business interests of Harland and Dorothy Cantin. See *Red Ball Interior Demolition Corp. v. Palmadessa*, S.D.N.Y. 1995, 908 F.Supp. 1226. The damage caused by the defendants was the natural and reasonably foreseeable consequence of the frauds perpetrated by the defendants. See *Protter v. Nathan's Famous Systems, Inc.* E.D. N.Y. 1995, 904 F.Supp. 101. The frauds perpetrated by the defendants was the legal cause of Harland and Dorothy Cantin being the targets of fraud, their business interests being interfered with, and related damages. See *Prudential Ins. Co. of America v. U.S. Gypsum Co.* D.N.J. 1993, 828 F.Supp. 287. The enterprise, The Nature Conservancy, is evident to a high degree and it is also evident to a high degree that associates such as Bent and Michelesen act as a continuing unit. See *Compagnie de Reassuarance D'Ile de France v. New England Reinsurance Corp.* D. Mass. 1993, 825 F.Supp. 370. It is undeniable that The Nature Conservancy, receives money for defrauding parties such as Harland and Dorothy Cantin and The Nature Conservancy's receipts and compensation to collateral enterprises represents their necessary investment in the class of business to which The Nature Conservancy belongs for the continuing privilege of, in the vernacular, continuing to defraud people of their legitimate business enterprises and property interests. See *Grand Cent. Sanitation, Inc. v. First Nat. Bank of Palmerton*, M.D.Pa. 1992, 816 F.Supp. 299. Undeniably, the defendants have used the United States Mail Service for purposes of fraud and extortion.

Affidavit

I, Harland Cantin, of age and competent to testify, state as follows based on my own personal knowledge:

1. The Nature Conservancy is not the *de facto* and *de jure* owner of Lot 15 Range 6 in the Town of Guildhall, Vermont, in Book 28 and pages 360 & 361, which reads as follows: "All that part of Lot Fourteen (14) in Sixth (6th) range of lots in said Guildhall which lies Westerly of the height of land running abut North and South diagonally across said Lot. Said plot of land hereby conveyed containing Sixty (60) acres, more or less, and being part of the Sheridan Farm so-called.

2. Champion International Corp. was not the owner of "All that part of Lot Fourteen (14) in Sixth (6th) range of lots in said Guildhall which lies Westerly of the height of land running abut North and South diagonally across said Lot. Said plot of land hereby conveyed containing Sixty (60) acres, more or less, and being part of the Sheridan Farm so-called," prior to the Nature Conservancy's claim of ownership.

3. Maudetta Taylor was coerced into surrendering her land to the Nature Conservatory.

4. Glenn Towne whose survey validated that Harland and Dorothy Cantin owned the property identified as "All that part of Lot Fourteen (14) in Sixth (6th) range of lots in said Guildhall which lies Westerly of the height of land running abut North and South diagonally across said Lot. Said plot of land hereby conveyed containing Sixty (60) acres, more or less, and being part of the Sheridan Farm so-called," withdrew the survey under duress.

5. A land survey which was allegedly prepared by Norbert Blais, was submitted by Robert Bent as purportedly proving that the Nature Conservancy owned the property described as "All that part of Lot Fourteen (14) in Sixth (6th) range of lots in said Guildhall which lies Westerly of the height of land running abut North and South diagonally across said Lot. Said plot of land hereby conveyed containing Sixty (60) acres, more or less, and being part of the Sheridan Farm so-called." The survey lacks authentication suggesting that the survey was fabricated by Robert Bent. Robert Bent and Norbert Blais have refused to answer questions regarding this alleged survey.

6. The "Sutherland" survey is an inaccurate boundary description which allegedly supersedes the Towne survey.

7. The Guildhall lotting plan erroneously shows a basic grid pattern with lots rectangular in size in the 2nd and 3rd division although the historical deeds and monuments on the ground show these rectangular lots vary in size..

8. As a result of the conduct of Robert Bent and Kristina Michelesen, Dorothy and I have been damaged financially, socially, and emotionally.

*Harland Cantin*
Harland Cantin

STATE OF __NH__              INDIVIDUAL ACKNOWLEDGMENT
COUNTY OF __Coos__

Before me, the undersigned, a Notary Public in and for said County and State on this __31__ day of __Oct__, 200__6__, personally appeared __Harland Cantin__ to me known to be the identical person who executed the within and foregoing instrument and acknowledged to me that he executed the same as his free and voluntary act.

Given under my hand and seal the day and year last above written.

My commission expires __Jodi A. Rooney__
Notary Public
My Commission Expires
March 19, 2008

_____ Notary Public

10

[A] cause of action accrues . . . . with each sale, the statute of limitatins begins to run anew. See *Klehr v. A.O. Smith Corp.* 521 U.S. 179 at page 189. [E]ach sale . . . starts the statutory period running again, regardless of the plaintiff's knowledge of the illegality at much earlier times. *Klehr, supra* at page 189. The commencement of the statute of limitations is a question of fact. . . . . It cannot be determined upon motion for summary judgment if there is a genuine question as to when it began to run. See *In re: Beef Indust. Antitrust Litig.*, 600 F.2d 1148 at pages 1169-70 (5th Cir. 1979). [W]hether the conspiracy continued into the limitations period by virtue of continued sales . . . is a genuine question for trial. Should the jury find that [infractions occurred beyond when the statute of limitations began to run] . . . even though plaintiffs could have sued [earlier], they were equally entitled to sue [after the statute of limitations had tolled]. See *Hanover Shoe,* 392 U.S. at page 502. Fraudulent concealment also tolls the Clayton Act's statute of limitations. See *In re: Beef Indust. Supra* at page 1169. In determining whether there is an issue of fact for trial regarding plaintiffs claim of fraudulent concealment, we must resolve all doubt against the moving party. See *Morton's Market, Inc. v. Gustafson's Dairy, Inc.* 198 F.3d 823 at ¶ [54] (11th Cir. 12/20/1999) relying on *Celotex,* 477 U.S. at page 323 and *Carbon Dioxide Antitrust Litig.,* 1993-2 CCH Trade Cases ¶ 70,436 at 5 (M.D.Fla. 1993). [T]he issue of when a plaintiff is on "notice" of his claim is a question of fact for the jury. See *Ballew v. A. H. Robins Co.* 688 F.2d 1325 (11th Cir. 1982), *Maughan v. SW Servicing, Inc.* 758 F.2d 1381 at page 1387 (10th Cir. 1985), *Lundy v. Union Carbide Corp.,* 695 F.2d 394 (9th Cir. 1982), and *Renfroe v. Eli Lilly & Co.,* 686 F.2d 642 (8th Cir. 1982). [W]hen a plaintiff in the exercise of due diligence should have known of the basis for his claims is not an appropriate question for summary judgment. See *Smith v. Duff and Phelps, Inc.,* 891 F.2d 1567 at page 1572 (11th Cir. 1990) determining that due diligence is a jury issue. See also *Durham v.*

*Business Management Assocs.*, 847 F.2d 1505 at page 1509 (11th Cir. 1988) determining "factual issue of due diligence involves state of mind not resolvable by summary judgment." [W]ith regard to the third element of [fraudulent concealment] test, the due diligence requirement, it is possible for a plaintiff to satisfy that element without demonstrating that it engaged in any specific inquiry. See *Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.* 71 F.3d 119 at page 128 (4th Cir. 1995). Whether an individual, by the exercise of reasonable diligence, should have known he had a cause of action against the defendant is, ordinarily, an issue of fact which should be left to the [trier of fact]. See *Puchner v. Bache Halsey Stuart, Inc.*, 553 So. 2d 216 at page 217 (Fla DCA 1978) determining that whether the plaintiff discovered, or by due diligence should have discovered the existence of the cause of action . . . was a question of fact . . . such issues are to be determined by the trier of fact.

12

Remedy sought and prayer for relief

The Federal District Court has a duty to order the Nature Conservancy to dissolve along with a restraining order to Robert Bent and Kristina Michelesen from engaging in future scams under other names. 18 U.S.C. § 1964(a)&(c) provides that the Nature Conservancy, Robert Bent, Kristina Michelesen, and Charles D. Hickey are enjoined from ever contacting Harland and Dorothy Cantin again and compelling the Nature Conservancy, Robert Bent, Kristina Michelesen, and Charles D. Hickey treble damages. The Court should, *sua sponte* make inquiry, reasonable under the circumstances, to determine what other victims of the Nature Conservancy may exist with the result of those damaged parties being compensated by the Nature Conservancy and all the discovered predicate actors such as is Robert Bent without whom the Nature Conservancy's scams would not have been possible.

TRIAL BY JURY DEMANDED

Prepared and submitted by: *Harland Cantin*   *Dorothy Cantin*
Harland Cantin       Dorothy Cantin
P.O. Box 67
Lancaster, New Hampshire 03584
Phone (802) 328-3896
Fax (802) 328-3169

State of NH 10/31/06
County of Coos

Jodi A. Rooney
Notary Public
My Commission Expires
March 19, 2008

*Jodi J. Rooney*

13